IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN GROSS,

                              Plaintiff,                              OPINION & ORDER

          v.
                                                                     12-cv-577-wmc
WILLIAM POLLARD *et al.*,

                              Defendants.

          In this civil action, plaintiff John Gross, who is incarcerated at Wisconsin Secure
Prison Facility ("WSPF"), has been granted leave to proceed *in forma pauperis* on claims that
certain defendants failed to protect him from sexual assault by a corrections officer,
defendant Jolene Mason, while he was in state custody at Waupun Correctional Institution
("WCI") and that other defendants retaliated against him for participating in the
subsequent investigation into that assault.  At the same time, other defendants were
dismissed from this case because Gross did not allege sufficient facts to show that they were
actually aware of the substantial risk to Gross.  (*See* Opinion & Order (dkt. #9).)

          Gross has since moved to amend his complaint.[1]  (Dkt. #27.)  In his motion, Gross
states that this amendment is intended to cure the defects identified by the court in his
original complaint and support the claims found lacking against the other defendants.  The
invocation of Federal Rule of Civil Procedure 15 is generally appropriate to add new parties
to a case.  6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1474, at 629.  Moreover,
the court is directed to "freely give leave [to amend] when justice so requires," Fed. R. Civ.
P. 15(a)(2).  Accordingly, the court will allow amendments in the absence of "undue delay,

---

[1] Gross also moved for reconsideration on the original screening order (dkt. #15); that motion will be
denied as moot.

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is considered "futile" if the complaint, as amended, still fails to state a claim on which relief could be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (citations omitted).

Much of Gross's amended complaint simply restates or elaborates on his original complaint. The court will not belabor those facts previously stated, but will address those allegations which have some bearing on claims against defendants not already screened to go forward in this suit. Specifically, while assuming knowledge of the facts alleged and reviewed in its original screening order (dkt. #9), the court will review Gross's proffered amended complaint to determine if it states a claim on which relief can be granted against: (1) the defendants previously terminated from this suit for failure to state a claim, and (2) the new defendants Gross has named.

## I. WCI Defendants Previously Terminated

### A. Captain Muraski

Gross alleges that Captain Muraski is liable under the Eighth Amendment for failure to protect him from harm. To state a claim for a failure to protect, Gross must allege (1) he has been incarcerated under conditions which, objectively, posed a "substantial risk of serious harm"; and (2) prison officials actually knew of but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). As noted in this court's previous screening order, the second requirement means an inmate must allege facts showing that defendants acted with "deliberate

2

indifference" to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834).  Conduct that "simply amounts to mere negligence or inadvertence is insufficient to justify the imposition of liability."  *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (quoting *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)) (internal quotation marks omitted).

Gross alleges in his amended complaint that Captain Muraski called him to the security floor sometime in late December, where he informed Gross that Washington, another inmate in segregation, reported seeing Mason and Gross in an embrace.  Muraski allegedly said he could simply place Gross in Temporary Lock-Up (TLU) during the investigation, but wanted to hear what Gross had to say first, because the claims were weak.  Gross alleges that he told Muraski that he was Mason's confidential informant.  Gross was then held in security for about an hour before Muraski released him, telling him that if he were to "tip Mason off" and she went to the union to cause trouble, Muraski would make Gross's life "hell."

In the first week of January, Gross alleges that Muraski called him to security again.  At that time, Muraski stated he had been looking into the situation and had discussed it with staff members, who verified that Gross was Mason's confidential informant.  Consistent with a later criminal complaint against Mason, however, Gross now alleges that Muraski actually believed Washington and ordered Mason and Gross to be monitored, rather than removing Gross from the cell hall.  Later in February, Muraski is alleged to have regularly taken Washington and another inmate, Guetzkow, out of their cells.  Allegedly during those conversations, Washington and Guetzkow repeatedly informed Muraski that Mason was carrying out an "inappropriate relationship" and "setting people up," but

3

Muraski refused to take action. Instead, upgraded cameras and monitors were placed in specific areas where Security had been informed that Mason was conducting her illicit meetings, suggesting that Muraski and other officials were playing a "fishing game."

With this additional detail, Gross has now alleged sufficient facts to support a claim for failure to protect against Muraski. As discussed in the court's screening order, allegations that Mason sexually assaulted Gross repeatedly over the course of several months suffice to show he was incarcerated in conditions posing a substantial risk of serious harm. Now Gross also alleges that Muraski actually knew of the repeated sexual assaults, but chose to disregard these risks to Gross and instead used this knowledge to set up a trap for Mason with Gross as bait. Gross may, therefore, proceed on his Eighth Amendment claim against Muraski.

Of course, Gross should continue to keep in mind that to survive summary judgment, he will need to submit admissible *evidence* on which a reasonable trier of fact could find Muraski actually knew of the risk Mason posed to Gross and failed to take reasonable action to abate that risk. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). He will not be able to rely on the allegations in his complaint, *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 692 (7th Cir. 2001), or on his personal beliefs, *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007), to meet that burden.

### B. Sergeant Beasly

Gross also asserts claims against Sergeant Beasly for failure to protect him from Mason. Specifically, Gross alleges that when Mason first began assaulting him, she reported learning from her friends, including Beasly, that Gross "knew how snitches were handled" at

4

WCI, and that when it came to cooperating with security, Gross would rather be sent to segregation than be believed a snitch.  Mason then went on to reassure Gross that he should not be worried about getting caught and that she could "take care of her friends." Additionally, Gross alleges that Mason later began feeding Beasly and two other officers information, saying it came from Gross, so as to support Mason's story that Gross was a confidential informant.

These allegations are substantially identical to those found deficient in Gross's original complaint.  Although the allegations provide some additional detail, they are still not enough to support an inference that Beasly actually knew of a substantial risk of serious harm to Gross.  As noted in the original screening order, the mere fact that Beasly was a friend of Mason does not allow the inference he knew there was a substantial risk that Mason would sexually assault Gross.  Nor does Beasly's alleged comment to Mason that Gross "knew how snitches were handled" permit such an inference.  Gross argues in his motion for reconsideration that the latter comment gave Mason the idea that Gross would not say anything if Mason were to approach him about "any illegal activities" for fear of being labeled a snitch.  While those comments may well have "placed [Gross] in the mind of Mason and therein placed [him] at 'risk of harm'" by Mason, as Gross alleges (see Mot. Reconsideration (dkt. #15) 2), that does not mean Beasly knew of that risk.  Even though it is possible that Beasly *might* have known of the risk Mason posed to Gross, he has at most pled facts "that are 'merely consistent with' [Beasly's] liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a claim on which relief can be granted, this is not enough:  a complaint must offer "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Without more, Gross cannot sustain a claim against Beasly.

### C. Officer Pontow

For the most part, Gross's allegations against Correctional Officer Pontow are the same as those against Beasly; he alleges that Pontow was one of Mason's friends and had informed her that Gross "knew how snitches were handled" at WCI. For the same reasons discussed above, those allegations are insufficient to state a claim for failure to protect against Pontow.

Gross goes on to allege that there were incident reports submitted to supervisory staff about "suspicious activities" by Mason. As a "cell hall regular," Gross alleges that, at the very least, staff like Pontow would have been aware that Mason was being monitored for "suspicious activities," and would likely have been aware of "some sort of communication" to monitor Mason and Gross. Finally, Gross alleges that Mason spoke to Pontow frequently about a sergeant who had previously been disciplined for bringing a tier tender (apparently an inmate job involving cleaning) contraband, as well as a nurse who had been in a similar situation.

These allegations are still not enough to allow for the reasonable inference that Pontow knew that Gross was at substantial risk of serious harm, but failed to take reasonable action to alleviate that risk. At most, Gross has alleged that Pontow knew Mason was under surveillance for *something*, but this does not equate to actual knowledge that Gross was at substantial risk of serious harm from Mason's as-yet-unidentified misconduct. Mason could have been under surveillance for any number of things, and Gross does not allege that Muraski actually informed cell hall staff of the nature of the "suspicious activities" for which they were monitoring. Likewise, although Gross alleges that cell hall staff submitted incident reports about Mason's "suspicious activities," he does

6

not allege what those activities were, nor does he provide the reports themselves to the court.  And the alleged conversations Mason had with Pontow regarding other prison staff members disciplined for misconduct are irrelevant to what Pontow knew about *Gross's* situation.  As with Beasly above, Gross has alleged facts that are "merely consistent" with liability, but do not reach the level of plausibility, and so he will not be allowed to proceed against Pontow.

### D. Sergeant Henslin, Officer Martin and Officer Goeser

Gross also seeks to bring failure to protect claims against dismissed defendants Henslin, Martin and Goeser, premised on the allegation that incident reports would have indicated Mason was under surveillance for "suspicious activity."  Without more, those allegations are not enough to make their actual knowledge of a risk to Gross plausible.

With respect to Correctional Officer Martin in particular, Gross also alleges that Martin joined Mason in coming up onto the cell tier to play poker with inmates.  Again, the fact that Mason and Martin apparently played poker together does not allow an inference that Martin would know Mason posed a substantial risk to Gross.  In the end, Gross alleges no additional facts against these three putative defendants, so he may not proceed on his claims against them either.

### E. Captain Holm

For the most part, Gross's claim against Captain Holm is based on the same allegations as his claims against Henslin, Martin and Goeser.  Since the court has already found those allegations are not enough to plead a plausible deliberate indifference claim, there would be nothing more to discuss.  In addition, however, Gross now alleges that in

mid-January, he was taken to security for a urine test.  When Gross asked Captain Holm

why he was being tested, Holm allegedly responded that perhaps whatever "Gross was into"

in the cell hall was the reason.  Gross argues that this is obviously a "veiled reference" to the

suspicious activities for which Mason and he were being monitored, but this is not clear at

all.  Gross goes on to allege that the urine test was based on an incident report that *Mason*

herself instructed someone else to write, rather than on Gross and Mason's illicit

relationship.  Gross's amended allegations against Captain Holm, therefore, suffer from the

same defects as those in his original complaint, and he may not proceed on this claim.

## II. New DCI Defendants

Gross also seeks to add claims against defendants from Dodge Correctional

Institution ("DCI") not named in his original complaint.  The court will again review each

of those new claims in turn to determine whether Gross has stated a claim on which relief

can be granted.

### A.  P.S.U. Worker Jane Doe

Gross alleges what is essentially a claim for deliberate indifference to his medical

needs against an unidentified Psychological Services worker at DCI for the inappropriate

treatment she provided.  Specifically, Gross alleges that upon arriving at DCI, he wrote to

Psychological Services and explained his situation and fear of being in the general

population there.  Gross further alleges that he was seen by Jane Doe, who said he should

consider himself lucky to have sex with a woman, something other inmates try for all the

time.  At some point, Jane Doe also allegedly told him he should "just move on."  Gross was

offered no additional psychological counseling, despite reporting that he was having an

8

extremely hard time coping with the aftermath of Mason's abuse. As a result, Gross claims to have developed paranoia, depression and new "psychological effects" that arise daily.

To state a claim for deliberate indifference to medical needs, Gross must allege that: (1) he had a serious medical need; and (2) the defendant was deliberately indifferent to that need. *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* at 396.

Here, Gross has alleged that he has suffered from significant psychological fallout as a result of Mason's conduct, resulting in paranoia, depression and other unspecified psychological effects. The court assumes for screening purposes that this constitutes a serious medical need. Gross also alleges that (1) the Psychological Services worker with whom he spoke told him to consider himself "lucky" and to "just move on," despite his attempts to explain his difficulty coping, and (2) he never received any additional counseling or support. If those allegations are deemed true and all reasonable inferences are made in plaintiff's favor, the "treatment" (or more accurately lack of it) Gross received for his mental health may be found "so far afield of accepted professional standards" as to constitute deliberate indifference. Accordingly, Gross has stated a deliberate indifference claim against Psychological Services worker Jane Doe and may proceed against her in this lawsuit.[2]

---

[2] Given that the dispositive motion deadline has not yet passed, and given that the court has stayed this action in its separate order of today, it does not appear to the court that Jane Doe will suffer any prejudice from being joined to this lawsuit at this juncture. The exception would be if Jane Doe has a defense premised on a failure to exhaust administrative remedies, as that deadline has already passed.

**B. Warden Cathy Jess, Security Director Rick Phillips and Complaint Examiner John Doe**

Gross also seeks to add Eighth and Fourteenth Amendment claims against Cathy Jess, the DCI Warden; Rick Phillips, the DCI Security Director; and John Doe, an Inmate Complaint Examiner at DCI.  Gross alleges that after being deemed a victim by Prison Rape Elimination Act ("PREA") investigators, he was nevertheless placed in segregation upon his transfer to DCI.  Gross further alleges that he wrote to each of these putative defendants, explaining that a victim should not be punished by a placement in segregation.  Defendants are alleged to have responded that he was being held as a "seg transfer for WCI," so all decisions as to his placement were made by WCI staff.  Gross alleges he then filed an inmate complaint explaining his situation, but the inmate complaint examiner granted him no relief.  Only after he appealed to the Corrections Complaint Examiner ("CCE") was he eventually removed from segregation and placed in the general population.

Taking first Gross's proposed Fourteenth Amendment claim, "[t]he Due Process Clause does not necessarily protect prisoners against the imposition of disciplinary segregation." *Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997).  Rather, its protections apply only "when prison officials restrain the freedom of inmates in a manner that 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 760 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  This is a high standard to meet.  For example, the Seventh Circuit has previously found that a period of six months and one day of segregation does not trigger due process rights, *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013), nor did 59 days in total lock-up, *Townsend v.*

---

Should that be the case, the court would at least entertain a motion to modify the scheduling order pursuant to Fed. R. Civ. P. 16(b)(4).

*Fuchs*, 522 F.3d 765 (7th Cir. 2008). *But see Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (240-day segregation period may give rise to a due process claim). Here, Gross has not alleged *any* facts as to either the duration or the conditions of his time in segregation. Without that information, he does not state a substantive due process claim under the Fourteenth Amendment.

Gross's prospective claim under the Eighth Amendment fails for similar reasons. First, he has alleged no facts suggesting that his time in segregation was a deprivation "denying 'the minimal civilized measure of life's necessities.'" *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, a "brief stay in disciplinary segregation is, figuratively, a kind of slap on the wrist that does not lead to a cognizable Eighth Amendment claim." *Leslie v. Doyle*, 125 F.3d 1132, 1135 (7th Cir. 1997). Third, this is true even when the punishment is imposed for "no offense at all," since the Eighth Amendment does not come into play unless the deprivation alleged is sufficiently objectively serious. *Id.* Without more, Gross has not stated a plausible claim under the Eighth Amendment.[3]

## III. Other Pending Motions

### A. Request for Extension of Legal Loan

Gross has filed a motion requesting a court order that directs prison staff to allow him to use legal loan funds to contact additional attorneys in an effort to gain representation. (Dkt. #33.) In his motion, he indicates it is DOC policy to restrict inmates to three representation-seeking letters per case. This court usually does not intervene in this

---

[3] Gross's amended complaint also seeks to add the same Eighth and Fourteenth Amendment claims against defendant Strahota, but he will not be permitted to do so for the same reasons explained above as to proposed defendants Jess, Philips and Doe.

sort of dispute, since it is not actually a claim on which Gross is proceeding in this case. Furthermore, the Seventh Circuit has previously held that an incarcerated litigant has "'no constitutional entitlement to subsidy." *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002). Thus, determinations regarding the extension of credit under Wis. Adm. Code § DOC 309.51 are "a matter strictly between [the litigant] and Wisconsin, and not any business of the federal courts." *Id.* Based on *Lindell*, this court has previously declined to interfere in prison officials' decisions with respect to the legal loan limit. *See, e.g., Gruenberg v. Tetzlaff,* No. 13-cv-095-wmc, 2014 WL 3735875, at *5 (W.D. Wis. Jul. 29, 2014); *Akright v. Capelle*, No. 07-cv-0625-bbc, 2008 WL 4279571, at *1 (W.D. Wis. Sep. 15, 2008). Without a showing that the three-letter restriction is entirely preventing Gross from litigating his case, which would implicate the right of access to the courts, the court will deny this motion.[4]

### B. Motion to Compel

Gross has also filed a motion to compel Mason to respond to certain discovery requests. (Dkt. #61.) With respect to most of those requests, Mason apparently indicated that she did not understand what information Gross was seeking. In opposing the motion to compel, she stands by those responses. (*See* dkt. #69.) Because the court has granted Gross's motion for assistance in recruiting counsel in a separate order today, it does not make sense to compel responses to requests that neither Mason nor her attorney claim to understand, particularly as *pro bono* counsel may be able to assist Gross in refining those requests. Accordingly, the motion to compel is denied without prejudice, as is the related motion for sanctions (dkt. #70). Aided by counsel, Gross should feel free to renew his

---

[4] Given that the court is granting Gross's request that the court recruit counsel by separate order today, the motion would also appear to be moot.

motion to compel or motion for sanctions should further discovery be blocked, understanding that the court requires parties to attempt in good faith to work out discovery disputes between themselves first. Finally, the current decision does not relieve defendant Mason from her obligation to produce responsive documents already requested and promised.

ORDER

IT IS ORDERED that:

1. Plaintiff John Gross's motion for reconsideration (dkt. #15) IS DENIED as moot.

2. Plaintiff's motion to amend his complaint (dkt. #27) is GRANTED IN PART and DENIED IN PART as set forth above. Specifically, plaintiff is granted leave to proceed against the following defendants:

   a. Captain Muraski on an Eighth Amendment failure to protect claim.

   b. Jane Doe Psychological Services Unit Worker on an Eighth Amendment deliberate indifference claim. Plaintiff may have 60 days to identify this defendant.

   Leave is denied as to all other proposed amendments to add defendants or claims.

3. Copies of plaintiff's amended complaint and this order are being sent today to the Attorney General for service on the defendants. The Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for these new defendants.

4. Plaintiff's motion for extension of his legal loan (dkt. #33) is DENIED.

5. Plaintiff's motion to compel (dkt. #61) is DENIED without prejudice.

6. Plaintiff's motion for sanctions (dkt. #70) is DENIED without prejudice.

Entered this 11th day of September, 2014.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge